IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY SOLOMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-00586-CV-W-ODS-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING
<u>COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in 1963. R. 56. He alleged he became disabled in January 2009 due to neck, back, leg, ankle, foot, and hand pain and swelling. R. 198, 218. Plaintiff's Functional Report states that his problems make it difficult for him to lift objects or sit, stand, or walk for extended periods of time. R. 218.

Plaintiff's medical records prior to the relevant period reflect that Plaintiff went to an orthopaedic clinic at the Truman Medical Center in September 2008 complaining of left knee pain after falling while intoxicated in November 2007. R. 261. He reported that the pain has resolved some since the incident, but he still had some pain in his knee and some knee instability. R. 261. X-rays from July 2008 revealed an old healed fracture and no other abnormalities. R. 262.

In November 2008, Plaintiff followed-up in the clinic concerning his left knee pain. R. 247. He reported taking ibrupofen as needed, but not routinely. R. 247. He stated

that he has pain when riding his bike. R. 427. He denied any numbness or tingling in his left knee. R. 247. He received a left knee analgesic injection, which he stated alleviated the pain in his knee "greatly." R. 253. The November 2008 medical record from the clinic noted that Plaintiff was prescribed physical therapy in September 2008, but did not receive any physical therapy until around the time of his November appointment. R. 247.

In January 2009,[1] Plaintiff went to an orthopedic clinic complaining of right knee pain. R. 253. The medical records note that Plaintiff's right-sided knee pain was similar in nature to his left-sided knee pain prior to his injection. R. 253. Plaintiff also indicated that he had some left ankle pain. R. 255. A physical examination revealed that both of Plaintiff's knees were stable. R. 253.

On September 17, 2009, Plaintiff went to a clinic at Truman Medical Center complaining of neck, back, leg, and knee pain. R. 415. The examining physician observed that Plaintiff "was very vague about his pain complaints," stating that he "hurt from head to toe in various places at various times." R. 415. Plaintiff also asked about "getting disability." R. 415.

On December 3, 2009, Plaintiff returned to the Truman Medical Center clinic complaining of head, neck, shoulder, arm, and hand numbness and tingling, in addition to throbbing pain in his left side. R. 408. Plaintiff also complained that he "feels like he has water in his ears." R. 408. The examining physician noted that a physical examination did not confirm Plaintiff's complaints of left-sided numbness and tingling. R. 410. Plaintiff had mild arthritic changes in his extremities and walked with a normal gait. R. 411. The examining physician recommended that Plaintiff consult a surgeon regarding a cyst on his left wrist. R. 410.

On December 10, 2009, Plaintiff saw a rheumatologist concerning his complaints of joint pain. R. 395. A physical examination revealed some tenderness and swelling over both wrists, elbows, knees, and ankles. R. 396. The doctor noted that Plaintiff's condition could suggest rheumatoid arthritis and prescribed him arthritis medication. R. 396.

---

[1] January 2009 is the month of Plaintiff's alleged onset of disability.

2

In February 2010, Plaintiff had the cyst on his left wrist removed. R. 362-63. 365. A week later, Plaintiff reported that his wrist pain was well-controlled. R. 359. On February 25, 2010, Plaintiff returned to the Truman Medical Center clinic and saw Kathy L. Kinder, M.D., complaining of chest, back, ear, left flank, and right jaw pain. R. 353. Plaintiff described his back pain as "moderate." R. 353.

On March 1, 2010, Plaintiff returned to the orthopaedic clinic to follow-up after his left wrist surgery and reported that his pain was "well controlled." R. 348. Plaintiff denied any numbness or tingling in his hands or fingers. R. 348. Plaintiff reported that his pain was well-controlled and had no other complaints. R. 348. Later in March 2010, Plaintiff went to a series of physical therapy sessions to improve the use of his left hand and wrist. R. 334-46. Plaintiff's ability to grasp with his left hand improved and he reported less pain in his left hand and wrist. R. 336.

On April 5, 2010, Plaintiff returned to the orthopaedic clinic to follow-up regarding his left wrist. R. 316. Plaintiff reported "doing well," and said there was "significant improvement" in his range of motion in his left wrist and significant pain relief. R. 316. Plaintiff requested narcotics but he was encouraged to take iburophen and "avoid narcotics as he is out of surgery by almost 2 months at this time." R. 316.

During physical therapy on April 7, 2010, Plaintiff reported that the discomfort in his left wrist had been decreasing, and that he had experienced improved functional use of his left hand for grasping, holding, and lifting objects. R. 325. Two days later Plaintiff reported that his left forearm/hand had "not been hurting to[o] much lately." R. 324. Plaintiff reported periodically having some sharp pains with performing daily tasks, but that discomfort would resolve on its own. R. 323. On April 21, 2010, Plaintiff stated that he was using his left hand for all daily tasks and was independent with his home program. R. 318. The physical therapist observed that Plaintiff made "excellent progress" with improving active motion in his left wrist, and was improving strength in his left hand for grasping objects. R. 318. Plaintiff also reported minimal to no subjective pain complaints. R. 318.

Plaintiff saw Dr. Kinder on April 27, 2010, concerning his back and neck pain. R. 302. Dr. Kinder noted that overall, Plaintiff was "doing well." R. 304.

In May 2010, Plaintiff's physical therapist released him from physical therapy. R. 275. Plaintiff said he had "significant improvement" in his range of motion around the left wrist as well as pain. R. 275. While at an examination at the orthopaedic clinic, Plaintiff reported neck pain and back pain, and pain in his right wrist which he said was getting worse. R. 275. Upon physical examination, the medical records report that Plaintiff's left upper extremity range of motion and left wrist movements are within normal limits. R. 275. The examining physician recommended that Plaintiff take ibuprofen as needed for pain and to continue ice and heat therapy. R. 275. The doctor did not think it was necessary to continue to follow-up with Plaintiff concerning his left wrist. R. 275.

An administrative hearing was held on August 26, 2010. R. 52. Plaintiff testified that the biggest problem that limits his ability to work is that he is not able to walk, grip, bend over, or lift. R. 57. He denied that the surgery on his wrist helped his ability to grip and claimed that he still experiences pain. R. 59. Plaintiff testified that he has constant pain in his lower back, and swelling and pain in his feet, hands, elbows, and wrists. R. 59-60, 67. He denied that the swelling has gotten any better while on rheumatoid medications. R. 67. On an average day, Plaintiff sits on a couch and watches television. R. 62. He denied any trouble with bathing and caring for his personal hygiene. R. 62.

At step one of the five-step sequential process, the administrative law judge ("ALJ") determined Plaintiff had not engaged in substantial gainful activity since January 27, 2009, the alleged onset date. R. 15. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, status post diskectomy at L5-S1 and rheumatoid arthritis. R. 15. At step three, the ALJ determined Plaintiff's ailments do not meet or equal a listed impairment. For steps four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with an ability to alternate positions as necessary; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and/or stairs; occasionally bending, stooping, squatting and/or kneeling; must avoid constant use of the left hand for handling/fingering; capable of frequent bilateral reaching,

handling and fingering and must avoid temperature extremes and
hazardous environments.

R. 16-17. Next, the ALJ found, based on the vocational expert's testimony, that Plaintiff is unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the regional and/or national economy that Plaintiff can perform, including ticket taker, usher, and as a marker. R. 19. Finally, the ALJ concluded Plaintiff is not disabled. R. 19.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

Plaintiff argues the ALJ did not account for his pain in reaching his RFC finding. However, in determining Plaintiff's RFC, the ALJ considered Plaintiff's symptoms and the extent to which they were consistent with the other record evidence. R. 16-18. *See* 20 C.F. R. §§ 404.1529 and 416.929 ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Here, there is substantial evidence in the Record to support the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible. As the ALJ noted, Plaintiff alleges disability due to pain at a level of 8 to 10 on a pain scale of 0 indicating no pain, and 10 indicating

5

excruciating pain. However, Plaintiff was not prescribed any narcotic pain medications as his physician discontinued them and placed him on non-steroidal anti-inflammatories. R. 17, 316. The ALJ also pointed out that Plaintiff's physical therapy notes indicate greater functional ability than Plaintiff's testimony. R. 17. For example, Plaintiff complained of problems in lifting and grasping with his left hand due to pain and swelling, but treatment notes from three weeks prior to the administrative hearing reflect that he had normal wrist movements and that he had no swelling or tenderness over the left wrist joint. R. 16-17, 58-59, 67-68, 275. The ALJ also considered Plaintiff's testimony that he spends most of his day lying on the couch and watching television, and "at times" occasionally participates in other activities. R. 62-63. Plaintiff testified that "at times" he needs both hands to open doors and a friend helps him get dressed a couple times a week and cleans for him. R. 58, 63, 70. However, Plaintiff's treating physician never placed Plaintiff on any restrictions. Finally, Plaintiff testified that he uses a four point cane or walker that he received from a friend and not prescribed by a doctor, and did not use any ambulation device at the hearing. R. 18, 75. The Court concludes that the ALJ properly articulated the inconsistencies in which she relied on in discrediting Plaintiff's subjective complaints and this Court affirms the ALJ's credibility determination. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) ("We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility.").

Next, Plaintiff argues that the ALJ's hypothetical to the vocation expert is improper because it did not include the limiting effects of his severe rheumatoid arthritis, including pain and numbness, in the hypothetical to the vocational expert. Plaintiff's argument is without merit. Defendant properly points out that a hypothetical question only needs to include those impairments and limitations that the ALJ found substantially supported by the record as a whole. "Discredited complaints of pain . . . are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). Accordingly, it was not necessary for the hypothetical to the ALJ to reference Plaintiff's complaints of pain as there is substantial evidence in the Record as a whole to discredit Plaintiff's subjective complaints.

6

Finally, Plaintiff contends the ALJ mischaracterized a state agency single decision maker's RFC form as a medical opinion. Plaintiff's argument is without merit as the Record does not support such a contention.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: September 5, 2013　　　　　　　　UNITED STATES DISTRICT COURT